**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 18-2317
_____

NORTH SOUND CAPITAL LLC; NORTH SOUND
LEGACY INTERNATIONAL; NORTH SOUND LEGACY
INSTITUTIONAL; UNITED FOOD COMMERCIAL
WORKERS LOCAL 500 PENSION FUND; COLONIAL
FIRST STATE INVESTMENTS LTD.; CFSIL-CFS
WHOLESALE INDEXED GLOBAL SHARE FUND;
CFSIL-COMMONWEALTH GLOBAL SHARES FUND 4;
CFSIL-COMMONWEALTH SPECIALIST FUND 13;
CFSIL WHOLESALE GEARED GLOBAL SHARED
FUND; CFSIL ATF CMLA INTERNATIONAL SHARE
FUND; CFSIL-COMMONWEALTH GLOBAL SHARES
FUND 6; CFSIL COMMONWEALTH SHARES FUND 2;
CFSIL-CFS WHOLESALE ACADIAN GLOBAL EQUITY
FUND; CFSIL-CFS WHOLESALE GLOBAL HEALTH &
BIOTECHNOLOGY FUND; CFSIL-CFS WHOLESALE
GLOBAL SHARE FUND,

Appellants

v.

MERCK & CO., INC. formerly known as SCHERING-
PLOUGH CORPORATION; MERCK SCHERING-
PLOUGH PHARMACEUTICALS; MSP DISTRIBUTION

SERVICES (C) LLC.; MSP SINGAPORE COMPANY LLC;
FRED HASSAN; CARRIE S. COX

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-13-cv-07240)
Honorable Freda L. Wolfson, U.S. District Judge

_____

No. 18-2318

GIC PRIVATE LIMITED,

Appellant

v.

MERCK & CO., INC. formerly known as SCHERING-
PLOUGH CORPORATION;
MERCK/SCHERING PLOUGH PHARMACEUTICALS;
MSP DISTRIBUTION
SERVICES (C) LLC; MSP SINGAPORE COMPANY LLC;
FRED HASSAN; CARRIE S. COX

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-13-cv-07241)
Honorable Freda L. Wolfson, U.S. District Judge

_____

No. 18-2319

GIC PRIVATE LIMITED,

Appellant

v.

MERCK & CO., INC.; MERCK/SCHERING-PLOUGH
PHARMACEUTICALS;
MSP DISTRIBUTION SERVICES (C) LLC; MSP
SINGAPORE COMPANY LLC;
RICHARD T. CLARK; DEEPAK KHANNA

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-14-cv-00241)
Honorable Freda L. Wolfson, U.S. District Judge

_____

No. 18-2320

NORTH SOUND CAPITAL LLC; NORTH SOUND
LEGACY INTERNATIONAL;
NORTH SOUND LEGACY INSTITUTIONAL; UNITED
FOOD COMMERCIAL
WORKERS LOCAL 1500 PENSION FUND,

Appellants

v.

MERCK & CO., INC.; MERCK/SCHERING-PLOUGH

3

PHARMACEUTICALS;
MSP DISTRIBUTION SERVICES (C) LLC; MSP
SINGAPORE COMPANY LLC;
RICHARD T. CLARK; DEEPAK KHANNA

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-14-cv-00242)
Honorable Freda L. Wolfson, U.S. District Judge

_____

Argued: March 20, 2019

Before: SHWARTZ, KRAUSE, and BIBAS, *Circuit Judges*

(Opinion Filed:  September 12, 2019)

Daniel Hume [ARGUED]
Karina Kosharskyy
Ira M. Press
Meghan J. Summers
Kirby McInerney
250 Park Avenue
Suite 820
New York, NY 10177

   *Counsel for Appellants*


Daniel J. Juceam
Daniel J. Kramer [ARGUED]
Theodore V. Wells, Jr.

Paul Weiss Rifkind Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019

*Counsel for Appellees*

———————————

OPINION OF THE COURT
———————————

KRAUSE, *Circuit Judge*.

In these consolidated appeals, we consider whether the Securities Litigation Uniform Standards Act (SLUSA) prohibits investors from bringing individual actions under state law if they exercise their constitutionally protected right to opt out of a class action. Hewing to SLUSA's text, we conclude that these opt-out suits and the class actions from which these plaintiffs excluded themselves were not "joined, consolidated, or otherwise proceed[ing] as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii)(II). Accordingly, we will reverse the District Court's dismissal of these suits and remand for further proceedings.

## I.  Background

This long-running dispute concerns allegations that two pharmaceutical manufacturers, Merck and Schering-Plough, stalled the release of damaging clinical trial results for their blockbuster drugs Vytorin and Zetia for years, tried to change the endpoint of the study to produce more favorable

results, and then concealed their role in pushing for the change.[1]  During this time, Merck and Schering-Plough allegedly made numerous statements touting the efficacy and commercial viability of Vytorin and Zetia.  Plaintiffs allege that the delay allowed Schering-Plough to raise $4.08 billion through a public offering in August 2007, which the company then used to purchase another pharmaceutical company that would lessen its reliance on Vytorin and Zetia.

Amid several critical press reports and an incipient congressional investigation, Merck and Schering-Plough finally released the clinical trial results in January and March 2008.  The data showed that "[i]n no subgroup, in no segment, was there any added benefit" from taking Vytorin, raising the possibility that the active-ingredient ezetimibe amounted to an "expensive placebo."  App. 165–66.  Based on the results, the New England Journal of Medicine, along with several leading cardiologists, recommended that doctors prescribe Vytorin and Zetia only if other classes of drugs failed to control a patient's cholesterol.

The devastating results for these popular anti-cholesterol drugs allegedly caused Merck's and Schering-Plough's stock price to plummet.  Between December 11, 2007 and March 31, 2008, Schering-Plough's common-stock price declined 52%, eliminating $23.63 billion in market

---

[1] Vytorin and Zetia are anti-cholesterol drugs that operate differently than the leading treatment for high cholesterol, a class of drugs called statins.  Statins reduce the synthesis of low-density lipoprotein in the liver, while Zetia inhibits the absorption of cholesterol in the small intestines.  Vytorin combines Zetia with a statin manufactured by Merck called Zocor.

capitalization. And Merck's stock price dropped 38%, amounting to around a $48 billion loss in market capitalization.

### A. Investors File Putative Class Actions Against Merck and Schering-Plough

Faced with enormous losses, investors soon filed separate putative class actions in the District of New Jersey against Merck and Schering-Plough, alleging each made numerous material misrepresentations about Vytorin and Zetia. Over a year later, in September 2009, the District Court denied defendants' motions to dismiss under the Private Securities Litigation Reform Act's (PSLRA) heightened pleading standard. Three years after that, the District Court denied defendants' motion for summary judgment and granted class certification.

The District Court then directed—as Rule 23(c)(2) requires—that investors receive notice of their right to opt out of the class actions. The court-approved notices provided investors with 45 days (that is, until March 1, 2013) to exclude themselves from the class actions. If they did so, the notices assured them, "you will not be bound by any judgment in this Action" and "will retain any right you have to individually pursue any legal rights that you have against any Defendants." *In re Merck & Co., Inc. Vytorin/ZETIA Sec. Litig.*, No. 2:08-cv-02177, ECF No. 266–1 at 11 (Dec. 19, 2012); *In re Schering-Plough Corp. / ENHANCE Sec. Litig.*, No. 2:08-cv-00397, ECF No. 331–1 at 11 (Dec. 19, 2012).

After the opt-out period ended, the District Court approved the settlement agreements the class-action plaintiffs

reached with Merck and Schering-Plough. At the parties' request, the District Court declined to provide class members with a second opportunity to opt out, but did offer opt-out investors 45 days to join the class actions and share in the recovery. In preliminarily approving the settlement agreements, the District Court reiterated that opt-outs "shall not be bound by the terms of the Settlement, the Stipulation, or any other orders or judgments in the Action." *In re Schering-Plough Corp. / ENHANCE Sec. Litig.*, Case No. 2:08-cv-00397, ECF No. 421 ¶ 11 (June 7, 2013); *In re Merck & Co., Inc. Vytorin/ZETIA Sec. Litig.*, Case No. 2:08-cv-02177, ECF 330 ¶ 11 (June 7, 2013). In October 2013, the District Court gave final approval to the class-action settlements and entered separate final judgments dismissing class members' claims with prejudice.

### B.    Opt-Out Investors Then File These Individual Lawsuits

The sixteen plaintiffs in these consolidated appeals fell within the class definition alleged and eventually certified in the class actions against Merck and Schering-Plough. But they were not named plaintiffs, and neither they nor their counsel participated in the class-action proceedings. After the District Court certified the class actions, they opted out on the last day, March 1, 2013, and declined to opt in to participate in the settlement agreements.

In November 2013 and January 2014, after the District Court entered the final judgments in the class-action suits, these opt-out investors ("Plaintiffs") brought their own actions against Merck and Schering-Plough, which had since merged. Their complaints track, sometimes verbatim, those filed in the class actions, except they added a fraud claim

8

under New Jersey common law. Along with their complaints, Plaintiffs identified the class-action suits as "related" on the civil cover sheet and in a certification, as required by that District's Local Rules. *See* D.N.J. L. Civ. R. 5.1(e), 11.2, 40.1(c). In briefing papers before the District Court, Plaintiffs asserted in connection with an unrelated argument that "Defendants have already engaged in lengthy and expensive discovery in the class cases," so their suits would not burden defendants. App. 966. But nothing suggests that Plaintiffs coordinated their lawsuits with the class actions or received access to confidential materials therefrom.

In their first motion to dismiss, Merck did not suggest that SLUSA precluded Plaintiffs' claims, even though that posed a threshold jurisdictional issue. *See In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009). Instead, Merck contended that their federal claims were barred by the Securities Exchange Act's statute of repose and that their state-law claims failed to plausibly allege actual reliance. The District Court rejected both arguments, but in an interlocutory appeal, we reversed the District Court's allowance of Plaintiffs' federal claims after the Supreme Court held that *American Pipe* tolling does not extend to statutes of repose. *See N. Sound Capital LLC v. Merck & Co. Inc.*, 702 F. App'x 75, 81 (3d Cir. 2017); *see also Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017). Our decision left Plaintiffs with only their state-law fraud claims.

On remand, Merck again moved for dismissal of Plaintiffs' state-law claims, arguing for the first time that SLUSA precluded them because the class actions and the opt-out suits were "joined, consolidated, or otherwise proceed[ing] as a single action for any purpose." 15 U.S.C.

9

§ 78bb(f)(5)(B)(ii)(II).[2]  In its opinion, the District Court recognized that Merck's argument "tests the limits of SLUSA's preclusive scope" and "it does not appear that any prior decision has addressed this issue." *N. Sound Capital LLC v. Merck & Co.*, 314 F. Supp. 3d 589, 601, 615 (D.N.J. 2018).  Nevertheless, the District Court concluded that Plaintiffs' claims were barred under SLUSA because the "Individual Actions and the Vytorin Class Actions have proceeded as a single action." *Id.* at 619.  Considering the statutory text, the District Court inferred that because Congress did not explicitly *exempt* opt-out suits from SLUSA, it necessarily "envisioned the aggregation of opt-out suits with related class actions" under SLUSA's mass-action provision. *Id.* at 605, 611.  The District Court also concluded that SLUSA's legislative history required it to "construe the definition of a 'covered class action' broadly." *Id.* at 606 (citation omitted).  And it relied on several district court decisions that, building upon each other, have espoused increasingly capacious interpretations of the mass-action provision. *Id.* at 606–19.

These appeals followed.

---

[2] The full provision states that a "covered class action" is: "(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which— (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." § 78bb(f)(5)(B)(ii).

## II.    Discussion[3]

In the wake of the Great Depression, Congress sought to "root out all manner of fraud" in securities by launching its "first experiment in federal regulation of the securities industry"—the Securities Act of 1933 and the Securities Exchange Act of 1934.  *Lorenzo v. SEC*, 139 S. Ct. 1094, 1102, 1104 (2019) (quoting *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 198 (1963)).  At the same time, Congress left undisturbed private remedies under state common law and so-called "blue-sky" laws.  *See Edgar v. MITE Corp.*, 457 U.S. 624, 641 (1982); 15 U.S.C. §§ 77p(a), 78bb(a).  This dual system of remedies has persisted since then, allowing aggrieved investors generally to seek redress under both state and federal law.[4]

---

[3] We have jurisdiction under 28 U.S.C § 1291, and the District Court exercised supplemental jurisdiction under 28 U.S.C. § 1367.  Because this appeal does not turn on any jurisdictional fact-finding conducted by the District Court, we exercise plenary review.  *See In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d at 254; *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010).

[4] Some of the Securities Act's and Exchange Act's provisions include express private rights of action, *see, e.g.*, 15 U.S.C. § 77k (Section 11 of the Securities Act), while federal courts under the "*ancien regime*" recognized implied rights of action under others—most notably, section 10(b) of the Exchange Act, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (citation omitted) (plurality opinion); *see Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975).  Although the Court's approach to implied rights of action has

11

Sixty years later, Congress revisited this dual system of remedies in the PSLRA, primarily to curb "perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1066 (2018) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006)). Rather than proscribing private suits under the securities laws outright, the PSLRA includes a series of mechanisms to dismiss unsubstantiated suits without discovery, *see* 15 U.S.C. § 78u-4(b), impose sanctions for frivolous actions, *see id.* § 78u-4(c), create a safe-harbor for certain forward-looking statements, *see id.* § 78u-5, and ensure that responsible stakeholders maintain control over class-action litigation, *see id.* § 78u-4(a)(3). These provisions, however, govern only securities claims brought under federal law in federal court. 15 U.S.C. §§ 77z-1(a)(1), 78u-4(a)(1).

So, dissatisfied with the PSLRA, some entrepreneurial plaintiffs began filing putative class actions in state court to evade the Act's strictures. *Merrill Lynch*, 547 U.S. at 82. As class actions alleging only state-law claims, these suits generally could not be removed to federal court under the then-prevailing diversity-jurisdiction rules. *See Zahn v. Int'l Paper Co.*, 414 U.S. 291, 301 (1973), *superseded in part by*

since shifted, *see Alexander v. Sandoval*, 532 U.S. 275, 287 (2001); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173–78 (1994), it has accepted these implied causes of action under stare decisis and as ratified by Congress in the PSLRA, *see Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 274–75 (2014); *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 165–66 (2008).

28 U.S.C. § 1332(d). To curtail this unprecedented shift of class-action securities litigation to state courts, Congress enacted SLUSA. *Merrill Lynch*, 547 U.S. at 82. But, yet again, Congress chose a measured approach. SLUSA "does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." *Id.* at 87. Instead, the SLUSA simply precludes (with some exceptions) investors from litigating their state-law claims alleging securities fraud through a "covered class action." *See* 15 U.S.C. § 78bb(f)(1).

SLUSA's definition of a "covered class action" comprises two parts. The first part, which all agree does not apply here, encompasses any lawsuit that seeks to recover damages for more than 50 persons or on a representational basis. 15 U.S.C. § 78bb(f)(5)(B)(i). The second part, which we shall dub the "mass-action provision," covers lawsuits that: (1) are "filed in or pending in the same court"; (2) involve common legal or factual questions; (3) seek damages for more than 50 persons; and (4) "are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B); *accord Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1346 (11th Cir. 2008).

Because the total number of investors in Plaintiffs' lawsuits does not exceed fifty, SLUSA's mass-action provision does not apply unless their individual opt-out lawsuits and the settled class actions together satisfy the statutory definition. On that front, Plaintiffs do not dispute that the class actions and their individual lawsuits were both filed in the District of New Jersey and involve substantially the same facts. Thus, this appeal turns on the fourth prong of the mass-action provision: whether the class actions and these

13

subsequent opt-out suits were "joined, consolidated, or otherwise proceed[ed] as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii)(II).

The opt-out plaintiffs insist that their individual actions do not satisfy this "single-action" requirement because they have never proceeded as a single action with the class actions. They argue both that their suits postdated the resolution of the class actions and that their suits were never coordinated with the class actions. By contrast, Merck interprets the single-action requirement to require a mere "functional relationship" between two suits, an amorphous standard so "broad[] and flexibl[e]" that it would seemingly embrace every suit that happens to share similar substantive allegations. Appellees' Br. 4.

We conclude Merck's strained reading contravenes both the plain text and underlying constitutional principles. Instead, as we explain below, (A) some actual coordination is required to constitute a single action, and (B) there was no such coordination between Plaintiffs' opt-out suits and the prior class actions.

## A.    The Single-Action Requirement Requires Some Actual Coordination

### a.    The Phrase "Join[der], Consolidat[ion], or Otherwise Proceed[ing] as a Single Action" Plainly Demands Coordination

We begin, as we must, with the mass-action provision's text. *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). To qualify as a mass action, the lawsuits must be "joined, consolidated, or otherwise proceed as a single action

14

for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii)(II). We first consider the meaning of "joined" and "consolidated" before turning to the phrase "otherwise proceed as a single action."

In law, the verbs "join" and "consolidate" share very similar meanings. *See Consolidation of actions*, Black's Law Dictionary 309 (1990) (cross-referencing joinder). "Join" means "to combine or unite in time, effort, action," *Join*, Black's Law Dictionary 836 (1990), while "consolidate" means "to unite or unify into one mass or body," *Consolidate*, Black's Law Dictionary 308 (1990). When used to refer to the joinder or consolidation of lawsuits, these words typically connote the "uniting [of] several actions," sometimes for all purposes, *Consolidation of actions*, Black's Law Dictionary 309 (1990), while other times just for pretrial purposes, *see* Fed. R. Civ. P. 42(a); 9A Charles Alan Wright et al., *Fed. Prac. & Proc.* § 2382 n.20 (3d ed. 2019). In federal court, the joinder or consolidation of separate suits is governed by Federal Rule of Civil Procedure 42, which provides that a court may "*join* for hearing or trial any or all matters at issue" in separate lawsuits or "*consolidate* the actions." Fed. R. Civ. P. 42(a) (emphasis added). In describing this rule, the Supreme Court has used "joinder" and "consolidation" interchangeably and observed that joining or consolidating cases results in the "merger" of "one or many or all of the phases of the several actions." *Hall v. Hall*, 138 S. Ct. 1118, 1125, 1130 (2018) (citation omitted).

We find these authorities instructive in ascertaining what Congress meant by the phrase "otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii)(II). Merck scrounges up a couple of dictionary definitions defining "proceed" as "to come forth from a source" or "to continue after pause or interruption."

Appellees' Br. 32 (quoting *Proceed*, Merriam-Webster's Dictionary (2018)). But we are not persuaded that Congress meant the word "proceed" in either sense: The "come forth from a single source" meaning does not fit at all because the provision neither uses the preposition "from" nor does it identify any source from which the lawsuits must arise.[5] The "continue after pause or interruption" definition comes closer to the meaning here, but it too does not naturally relate to a "single action," much less joinder or consolidation. Instead, we conclude Congress intended the *legal* definition of "proceed," which—consistent with the meaning of joinder and consolidation in Black's Law Dictionary and Rule 42(a)—means "to carry on a legal action or process," *Proceed*, Webster's Third New International Dictionary 1807 (1990) [hereinafter Webster's Third Dictionary]; *see also Proceed*, The American Heritage Dictionary 1444 (3d ed. 1992) ("[t]o institute and conduct legal action").

With this definition of "proceed" in mind, we consider what Congress meant by the broader phrase "otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii)(II). The adjective "single," when used in this statute to modify "action," means "consisting of one as opposed to or in contrast with many," while "action" refers to

---

[5] Webster's Third Dictionary offers, as an example of the "come forth from a source" definition, a line from Charles Dickens's *A Tale of Two Cities* capturing how Doctor Manette's "lips began to form some words, though no sound *proceeded from them.*" *Proceed*, Webster's Third New International Dictionary 1807 (1990) (emphasis added). Merck's contention that Congress intended this meaning of proceed leaves us, like Dr. Manette, speechless.

a suit. Webster's Third Dictionary 21, 2123; *see also Single*, American Heritage Dictionary 1684 (3d ed. 1992) ("[n]ot divided; unbroken"). By qualifying "single action" with the prepositional phrase "for any purpose," Congress clarified that the lawsuits need not proceed together for all—or even most—purposes; a group of lawsuits may satisfy the statutory requirement even if a court contemplates separate trials, judgments, or hearings. *See Instituto De Prevision Militar*, 546 F.3d at 1347. In this respect, SLUSA extends beyond the Class Action Fairness Act's mass-action removal provision, which exempts all pretrial coordination. 28 U.S.C. § 1332(d)(11)(B)(ii)(IV). But, at a minimum, suits do not "proceed as a single action" unless they are somehow combined for the joint management of a common stage of the proceedings (such as discovery) or the resolution of a common question of law or fact.

A corollary of our reading is that, as a general matter, cases cannot "proceed as a single action" unless they coincide for some period. If two cases never overlap, a court cannot combine them for management of a common stage of the proceedings or for resolution of a common question. Thus, while we cannot rule out some extraordinary exception, we are hard-pressed to imagine any scenario in which two cases that never overlap could function as a single lawsuit on any dimension, as the mass-action provision requires. To be clear, we do not read the single action requirement to mean that cases must be coextensive with one another but rather that they be at least partially coordinated, which would seem invariably to require that they coincide for some period. *See, e.g.*, *In re Lehman Bros. Sec. & ERISA Litig.*, 131 F. Supp. 3d 241, 266–68 (S.D.N.Y. 2015) (mass-action provision satisfied

where two cases were combined for discovery for some time, but one case was later settled and dismissed).

This common-sense interpretation draws further support from the time-honored canon *ejusdem generis*, which teaches that "where general words follow an enumeration of two or more things," those successive words refer "only to persons or things of the same general kind or class specifically mentioned." Antonin Scalia & Bryan A. Garner, *Reading Law* 199 (2012); *see, e.g.*, *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003). For the canon to adhere, the preceding words in the list must share a "common attribute." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008).

The mass-action provision presents a textbook case for applying *ejusdem generis*. The preceding verbs "joined" and "consolidated" are nearly synonymous when used to refer to the union of lawsuits, and "otherwise" signals a commonality between those preceding words and the phrase "proceed as a single action." *See Begay v. United States*, 553 U.S. 137, 143–44 (2008), *abrogated on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015); *id.* at 151 (Scalia, J., concurring in judgment) (agreeing with the majority that "by using the word 'otherwise' the writer draws a substantive connection between two sets" based on "whatever follows 'otherwise'"); *Bd. of Ed. v. Harris*, 444 U.S. 130, 143 (1979) (accepting that a statute's use of "otherwise" connotes a link with a preceding clause). The meaning of join and consolidate therefore illustrates what Congress meant by the phrase "otherwise proceed as a single action."

Confronted with these textual clues, Merck seizes on the mass-action provision's use of "any." Although a statute's

18

use of the word "any" may favor a broader reading, *see, e.g.*, *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019), its meaning "necessarily depends on the statutory context," *Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617, 629 (2018). Or, as the Supreme Court quipped in rejecting another strange interpretation of SLUSA premised on the word "any," "we do not read statutes in little bites." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 643 (2006). Here, "any" modifies "purpose"; it provides no cause for reading the preceding phrase "proceed as a single action" "completely out of the statute." *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 629. Nor does "any" preclude the application of *ejusdem generis. See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001) (applying the canon to the phrase "any other class of workers engaged in . . . commerce"). Thus, the "word 'any' . . . does not bear the heavy weight" that Merck places on it. *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 629.

Merck equally misses the mark in contending that the single-action requirement must receive a counter-textual construction to avoid rendering the mass-action provision's first prong—the separate requirement that the suits be "filed in *or* pending in" the same court, 15 U.S.C. § 78bb(f)(5)(B)(ii) (emphasis added)—superfluous. By reaching suits "filed in or pending in" a court, SLUSA's mass-action provision addresses both actions that originate in a particular court and those that are transferred or removed there. *See In re Enron Corp. Secs.*, 535 F.3d 325, 334, 341 (5th Cir. 2008) (finding the single-action requirement satisfied where defendants removed the suits as "related to" a bankruptcy proceeding under 28 U.S.C. § 1334). If anything, Merck disregards the canon against superfluity by conflating the single-action requirement with SLUSA's second prong—

19

the requirement that the suits share "common questions of law or fact." 15 U.S.C. § 78bb(f)(5)(B)(ii).

At bottom, notwithstanding Merck's linguistic gymnastics, the single-action requirement cannot be contorted enough to cover "functional coordination," as opposed to actual coordination and, as a general matter, there is no occasion for actual coordination if suits never overlap in time.

b.    SLUSA's Broad-Construction Principle Is Unavailing

With so little in the text to support its interpretation, Merck leans heavily on the premise that SLUSA should receive "a broad interpretation . . . to ensure the uniform application of federal fraud standards." Appellees' Br. 22 (quoting *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 299 (3d Cir. 2005)). This argument is doubly flawed.

First, despite entreaties, Congress has repeatedly declined the invitation—in the Securities Act, the Exchange Act, the PSLRA, and SLUSA itself—to broadly preempt state-law securities claims. In enacting SLUSA, Congress "simply denie[d] plaintiffs the right to use the class-action device to vindicate certain claims"; it chose not to "actually pre-empt any state cause of action." *Merrill Lynch*, 547 U.S. at 87. Merck's interpretation would upend Congress's measured approach. Any serious allegations of securities fraud will likely prompt the filing of at least one putative class-action lawsuit. Under Merck's reading, the mere existence of a class action would preclude individual plaintiffs from bringing state-law claims, even if individual plaintiffs do not participate at all in the class proceedings and, when presented with the opportunity, opt out of the class

20

action.[6]  As a result, Merck's proposed construction would foster the complete preemption of state-law securities claims—precisely what Congress chose *not* to do in adopting SLUSA.  *See Merrill Lynch*, 547 U.S. at 87.

Second, and more importantly, as the Supreme Court has recently admonished lower courts, the "broad-construction" canon does not render SLUSA somehow magically impervious to traditional tools of statutory construction.  *See Cyan*, 138 S. Ct. at 1072.  Because "[n]o legislation pursues its purposes at all costs," courts have "no license to disregard clear language based on an intuition that Congress must have intended something broader."  *Id.* at 1073, 1078 (internal quotation marks and citations omitted).  And consistent with that admonition, we will not read the mass-action provision "in a most improbable way" just "to make the world of securities litigation more consistent or pure."  *Id.* at 1073.  In short, Merck's insistence that SLUSA

---

[6] Of course, for SLUSA's mass-action provision to adhere, the actions would also have to be "filed in or pending in" the same court, 15 U.S.C. § 78bb(f)(5)(B)(ii), and defendants could not use SLUSA's removal provision to manufacture this prerequisite for preclusion, *see Cyan*, 138 S. Ct. at 1076–78; *Kircher*, 547 U.S. at 644 n.12; *see also* 28 U.S.C. § 1332(d)(9) (excluding securities suits from the Class Action Fairness Act's grant of diversity jurisdiction).  But, as these cases reflect, opt-out plaintiffs often pair state-law claims with Exchange Act claims, which cannot be brought in state court.  *See* 15 U.S.C. § 78aa(a).  Through simple venue transfer and multidistrict centralization, then, opt-out lawsuits will often arrive in the same federal district as class actions.

should be broadly interpreted for policy reasons is unavailing in the face of the statutory text.

### c. Merck's Expansive Reading Raises Constitutional Concerns

Our reading of the statute also ensures that it comports with the Constitution, for it would raise serious due process concerns if Congress conditioned the extinguishment of opt-out investors' state-law claims on whether an unaffiliated party had elected to bring a putative class action. To comport with the Fifth and Fourteenth Amendments, every absent class member must "be provided with an opportunity to remove himself from" a class action seeking predominantly damages. *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). That is, at least where damages are at stake, the class-action device passes constitutional scrutiny only because putative class members can easily extricate themselves from the proceedings. Thus, to the extent that a policy burdens that opt-out right or, worse yet, saps it of meaning, it would raise serious constitutional concerns. Thankfully, at least in this case, the mass-action provision evinces no intent to press these constitutional boundaries.[7]

---

[7] This case does not present a circumstance in which a district court, over an opt-out plaintiff's objection, consolidated her action with a class action, thereby extinguishing her state-law claims. *See Instituto De Prevision Militar*, 546 F.3d at 1347 (hypothesizing that an opt-out plaintiff might avoid the mass-action provision by "argu[ing] to the district court that consolidation was inappropriate because the joinder for discovery purposes would result in

22

In sum, we conclude that two suits are not "joined, consolidated, or otherwise proceed[ing] as a single action for any purpose," 15 U.S.C. § 78bb(f)(5)(B)(ii)(II), unless the actions are somehow combined, in whole or in part, for case management or for resolution of at least one common issue.

## B. Plaintiffs' Opt-Out Suits Never Proceeded as a Single Action with the Prior Class Actions

Applying our view of the single-action provision presents no difficulties. In finding the suits precluded, the District Court relied on the mere fact that the opt-out investors happened to meet a class definition, filed complaints resembling their class counterparts, complied with certain local rules requiring them to identify the class actions as related, and predicted that defendants would not have to duplicate discovery. *See N. Sound Capital*, 314 F. Supp. 3d at 610–12. But Plaintiffs' suits and the prior class actions never existed at the same time. So it comes as no surprise that the purported "indicia of coordination," *id.* at 612, even taken together, do not suggest actual coordination.

It is axiomatic that an unnamed class member is not "a party to the class-action litigation before the class is certified." *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (emphasis and citation omitted). For class actions seeking predominantly damages, Rule 23 adds that putative class members do not become party plaintiffs until the time to opt

SLUSA preclusion"); *cf.* 15 U.S.C. § 78bb(f)(5)(F) (providing that SLUSA's definition of a covered action does not "affect the discretion of a State court" to join or consolidate actions, without mentioning federal courts). We therefore leave that difficult issue for another day.

23

out has elapsed. *See* Fed. R. Civ. P. 23(c)(2)(B)(v)–(vi), (3)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974); *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56–57 (1st Cir. 2004). If an absent class member exercises this right, "she can litigate herself another time—or choose to not litigate at all." William B. Rubenstein, 3 *Newberg on Class Actions* § 9:38 (5th ed. 2019). By guaranteeing putative class members an unqualified right to exclude themselves, Rule 23 honors "our 'deep-rooted historic tradition that everyone should have his own day in court.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (quoting *Martin v. Wilks*, 490 U.S. 755, 762 (1989)). Thus, if a plaintiff has timely opted out of a class action, the mere fact that he satisfies a class definition does not suggest coordination.

To be sure, despite opting out, an erstwhile class member turned individual plaintiff may incidentally benefit from the existence of a class action: Pleadings have been filed, arguments aired, and perhaps even precedent established.[8] Here, for instance, rather than starting from

---

[8] To this list of potential benefits, Merck adds for the first time on appeal *American Pipe* tolling, a rule that tolls the statute of limitations for individual claims while timely class claims remain pending. *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 708–09 (3d Cir. 2019). But the opt-out investors here likely need not rely on *American Pipe*, because their state-law fraud claims enjoy a six-year statute of limitations, which follows the discovery rule. *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 513 (3d Cir. 2006). At any rate, the possibility of *American Pipe* tolling "demonstrate[s] only that a person not a party to a class suit

24

scratch, the opt-out investors undoubtedly considered the class action complaints in drafting their own. But the statute does not speak of obtaining a benefit, but of "join[der], consolidat[ion], or otherwise proceed[ing] as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii)(II). The commonalities in Plaintiffs' pleadings certainly satisfied SLUSA's separate requirement that the suits "involve[e] common questions of law or fact," *id.* § 78bb(f)(5)(B)(ii), and could have induced a court or the parties themselves to coordinate the actions had their suits overlapped in time. But it did not, so that determinative step was never taken.

Merck's intimation that any benefit satisfies the single-action requirement—besides lacking a foothold in the statute—proves too much. Merck places great weight on parallels between Plaintiffs' pleading and the class-action complaints, but Plaintiffs would have received a benefit even if they had completely rewritten their pleadings or just read the pleadings once before conducting their own investigation. Only a hermetically sealed opt-out investor could possibly escape the all-encompassing sweep of Merck's proposed atextual rule.[9]

---

may receive certain benefits (such as the tolling of a limitations period) related to that proceeding," *Smith*, 564 U.S. at 313 n.10—not that an individual action and class action are "joined, consolidated, or otherwise proceed[ing] as a single action."

[9] Unlike the District Court, we do not believe that the failure to explicitly carve out opt-out suits suggests anything, much less "speaks volumes." *N. Sound Capital*, 314 F. Supp. 3d at 611, 616. Courts sometimes consider the existence of

25

Finally, neither Plaintiffs' identification of the class actions as related nor their statements before the District Court give us pause. Under the District of New Jersey's Local Rules, Plaintiffs had to identify the class actions as related because their suits involved the same subject matter as the class actions. *See* D.N.J. L. Civ. R. 5.1(e), 11.2; 40.1(c). While such a filing could eventually result in coordination with another pending action, merely identifying the other actions as related has no such effect. And the Plaintiffs' statements before the District Court, made to dissuade it from certifying its first dismissal order for interlocutory review, simply played down the burden that their suits would pose; they did not insinuate that the opt-out plaintiffs had collaborated with the class-action plaintiffs.

Our conclusion does not conflict with any circuit decision to have considered the single-action requirement. *See Instituto De Prevision Militar*, 546 F.3d at 1347 (individual plaintiff agreed to consolidate discovery with class action); *In re Enron Corp. Secs.*, 535 F.3d at 342 (more than 50 plaintiffs, represented by the same counsel, filed joint motions and coordinated discovery); *see also Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 417 (2d Cir. 2011) (affirming, in an unpublished summary order, the district court's conclusion that a plaintiff's state-law claims satisfied the mass-action provision, where he voluntarily agreed to stay

an exemption in construing a general mandate if one interpretation of the mandate would render the exemption superfluous. *See, e.g.*, *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007). But we fail to see how the *lack* of an exemption can *broaden* the ordinary meaning of the mass-action provision.

his actions pending the resolution of several motions to dismiss). Beyond these authorities, the parties devote much of their briefing on appeal to various district court decisions. We do not feel compelled to dwell on them, because, as the District Court recognized, none deemed the single-action requirement satisfied on such meager facts. But we hasten to note our concern with one perceptible trend: From a broad but plausible interpretation of the single-action requirement, some reasoning in these decisions has become increasingly unmoored from the statutory text.[10] Today, we steer this jurisprudence towards safer waters.

## III. Conclusion

For busy courts presiding over complex securities litigation, opt-out lawsuits can sometimes seem nettlesome. But the right to exclude oneself from a class action, even if not actually exercised by most class members, should not be

---

[10] *See, e.g.*, *Discovery Glob. Citizens Master Fund, Ltd. v. Valeant Pharm. Int'l, Inc.*, No. 16-cv-7321, 2018 WL 406046, at *6 (D.N.J. Jan. 12, 2018) (noting it was "unpersuaded by Plaintiffs' argument that [the individual actions] are separate and independent from . . . the Class Action" in part because they "explicitly identified [the Class Action] on their Civil Cover Sheet" and "rely on the Court's decision in the Class Action in connection with [its] motions"); *Kuwait Inv. Office v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 813 (S.D.N.Y. 2015) (finding the fact that plaintiffs "assert the same factual and federal legal claims raised in the Class Action" salient to whether the single action requirement was satisfied).

discounted or derided as "gamesmanship." By its terms, SLUSA does not disturb the right to opt out, and we refuse to abandon traditional tools of statutory interpretation and common sense to give Merck what Congress has not. We will therefore reverse the District Court's dismissal order and remand for further proceedings consistent with this opinion.[11]

---

[11] In its renewed motion to dismiss, Merck also urged the District Court to decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims, *N. Sound Capital*, 314 F. Supp. 3d at 599; *see* 28 U.S.C. § 1367(c), and we recognize it may do so again. We note that these suits have been pending for more than five years and produced two appeals to this Court. In the ordinary course, "where the claim[s] over which the district court has original jurisdiction [are] dismissed before trial, the district court *must* decline to decide the pendent state claims." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citation omitted). But it need not do so where "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Id.* (citation omitted). We leave this determination to the discretion of the District Court. *See* Charles Alan Wright et al., 13D *Fed. Prac. & Proc.* § 3567.3 (3d ed. 2019) (observing that the presumption that a district court should decline to exercise supplemental jurisdiction if it has dismissed all original-jurisdiction claims "is just that—a presumption and not a rule").

SHWARTZ, <u>Circuit Judge</u>, dissenting.

Plaintiffs are sixteen institutional investors who purchased Merck & Co., Inc. ("Merck") and Merck/Schering Plough Pharmaceuticals ("Schering") stock. They appeal the District Court's order dismissing their state-law fraud claims as barred under the Securities Litigation Uniform Standards Act's ("SLUSA") preclusion provision, 15 U.S.C. § 78bb(f)(1). Whether Plaintiffs' complaints are precluded depends on whether their cases are part of a "covered class action" under SLUSA. As explained below, because Plaintiffs, as class members, participated in and benefited from numerous pretrial proceedings in the Vytorin Class Action cases, their opt-out actions functionally proceeded as a single action with the class actions. I would therefore hold that the District Court correctly dismissed their complaints under SLUSA's preclusion provision.[1]

---

[1] SLUSA dismissals are jurisdictional because SLUSA prohibits "covered class actions" from being "maintained" in "[f]ederal court." <u>Hampton v. Pac. Inv. Mgmt. Co.</u>, 869 F.3d 844, 847 (9th Cir. 2017). As a result, Federal Rule of Civil Procedure 12(b)(1) applies. <u>See</u> <u>In re Lord Abbett Mut. Funds Fee Litig.</u>, 553 F.3d 248, 254 (3d Cir. 2009). Under Rule 12(b)(1), a defendant may launch a factual challenge to subject matter jurisdiction. <u>Hartig Drug Co. v. Senju Pharm. Co.</u>, 836 F.3d 261, 268 (3d Cir. 2016). In a factual attack, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case, and no presumptive truthfulness attaches to the plaintiff's allegations." <u>Id.</u> (quotation marks and alteration omitted). Thus, we may consider evidence outside the pleadings. <u>Id.</u> The plaintiff bears the burden of proving that jurisdiction exists. <u>Id.</u>

1

I reach this conclusion based on SLUSA's purpose and text. Congress enacted SLUSA to "prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [Private Securities Litigation] Reform Act [of 1995] ('PSLRA')." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 82 (2006) (citations omitted). The PSLRA sought to "curb abuses in private class securities litigation" by "implement[ing] a host of procedural and substantive reforms, including more stringent pleading requirements to curtail the filing of meritless lawsuits." Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 298 (3d Cir. 2005) (internal quotation marks omitted). Securities plaintiffs attempted to avoid PSLRA's requirements "by filing private securities class actions in state rather than federal court." Id. Congress passed SLUSA "to close this perceived loophole by authorizing the removal and federal preemption [or preclusion] of certain state court securities class actions." Id.; LaSala v. Bordier et Cie, 519 F.3d 121, 128 (3d Cir. 2008).

SLUSA contains a provision that precludes "covered class action[s]" from proceeding in state or federal court. § 78bb(f)(1). This provision provides, in relevant part:

> No covered class action based upon the statutory
> or common law of any State or subdivision

---

We construe jurisdictional statutes such as SLUSA's preclusion provision "mindful that it is our obligation to effectuate the intentions of Congress in interpreting those statutes." New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1510 (3d Cir. 1996).

2

thereof may be maintained in any State or Federal court by any private party alleging—

> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security . . . .

Id. SLUSA thus precludes actions that satisfy the following four elements: (1) "covered class action"; (2) based on state statutory or common law; (3) concerning a covered security; and (4) alleging that defendants made a misrepresentation or omission of a material fact . . . in connection with the purchase or sale of that security."[2] O'Donnell v. AXA Equitable Life Ins. Co., 887 F.3d 124, 128 (2d Cir. 2018). Only the first element is in dispute: whether Plaintiffs' state-law fraud claims are part of a "covered class action."

SLUSA defines "covered class action" as:

> (ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which--

---

[2] Other courts have similarly parsed the preclusion provision. See Fleming v. Charles Schwab Corp., 878 F.3d 1146, 1152 (9th Cir. 2017); In re Enron Corp. Sec., 535 F.3d 325, 338-39 (5th Cir. 2008); Herndon v. Equitable Variable Life Ins. Co., 325 F.3d 1252, 1253 (11th Cir. 2003); see also In re Franklin Mut. Funds Fee Litig., 388 F. Supp. 2d 451, 471 (D.N.J. 2005).

3

> (I) damages are sought on behalf of more than 50 persons; and
>
> (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.[3]

§ 78bb(f)(5)(B)(ii). The sole question here is whether Plaintiffs' individual actions and the Vytorin Class Actions "otherwise proceed[ed] as a single action for any purpose."[4] Id. § 78bb(f)(5)(B)(ii)(II). To answer this question, we must decipher the meaning of this phrase.[5]

---

[3] A "covered class action" also includes certain "single" lawsuits that are not at issue. See 15 U.S.C. § 78bb(f)(5)(B)(i).

[4] Plaintiffs agree that (1) they filed their opt-out suits in the same court where the Vytorin Class Actions were litigated and (2) their suits share a common question of law or fact with the Vytorin Class Actions.

[5] Only two Courts of Appeals have addressed this subject and they support the conclusion here: In re Enron Corp. Sec., 535 F.3d 325 (5th Cir. 2008), and Amorosa v. AOL Time Warner Inc., 409 F. App'x 412 (2d Cir. 2011). In Enron, the Court of Appeals for the Fifth Circuit affirmed dismissal based on SLUSA's preclusion provision because plaintiffs filed "nearly identical complaints" with the MDL; jointly scheduled discovery with the MDL; filed joint motions; provided "nearly identical discovery responses"; and used the "same experts and expert reports" in their individual actions. Enron, 535 F.3d at 342.

In Amorosa, the Court of Appeals for the Second Circuit also affirmed dismissal based on SLUSA's preclusion provision "[f]or substantially the reasons set forth by the

4

I

   To determine the phrase's meaning, we begin with its language.  In re Lord Abbett Mut. Funds Fee Litig, 553 F.3d 248, 254 (3d Cir. 2009).  "If the language of the statute expresses Congress's intent with sufficient precision, the inquiry ends there and the statute is enforced according to its terms."  Id. (citation omitted).  If, however, the statute "does not express Congress's intent unequivocally," we refer to its legislative history "and the atmosphere in which the statute was enacted . . . to determine the congressional purpose."  Id. (citation omitted).

   For Plaintiffs' lawsuits to be a "covered class action," they must "otherwise proceed as a single action for any purpose."  15 U.S.C. § 78bb(f)(5)(B)(ii)(II).  The clause has two words that indicate the phrase "covered class action" has a broad definition: "otherwise" and "any."  The word "otherwise" is used along with "joined" and "consolidated," so the statute's separate inclusion of these words reveals that the use of the word "otherwise" seeks to capture actions other than those that have been actually associated via formal invocation of the Federal Rules of Civil Procedure.  See Otherwise, Oxford English Dictionary Online, http://www.oed.com/view/Entry/133247? redirectedFrom=otherwise#eid (last visited Aug. 25, 2019)

---

district court in its opinion."  409 F. App'x at 417.  The district court in Amorosa analyzed several coordinated procedural events in determining that the plaintiff's action was a "covered class action" under SLUSA.  See Amorosa v. Ernst & Young LLP, 682 F. Supp. 2d 351, 375-77 (S.D.N.Y. 2010).

(defining "otherwise" as an adverb that means "in another way"); see also Amorosa v. Ernst & Young LLP, 682 F. Supp. 2d 351, 375 (S.D.N.Y. 2010) ("[T]his Court holds that an action need not have been formally joined or consolidated with other actions in order to be a 'covered class action' and subject to SLUSA's [preclusion] provision."). Thus, the word "otherwise" captures a broader swath of litigation activity than that involving formally joined or consolidated actions.

"[T]he word 'any' [also] has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" United States v. Gonzales, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)). "Any" is "used to refer to a member of a particular group or class without distinction or limitation (hence implying every member of the class or group, since every one may in turn be taken as a representative)." Any, Oxford English Dictionary Online, http://www.oed.com/view /Entry/8973?redirectedFrom=any#eid (last visited Aug. 25, 2019). The word "any" "can and does mean different things depending upon the setting." Nixon v. Mo. Mun. League, 541 U.S. 125, 132 (2004); Small v. United States, 544 U.S. 385, 388 (2005) (noting that while the word "any" "demands a broad interpretation," it still cannot be "considered alone"). As a result, we must look to surrounding words to determine what the word "any" captures. See Flora v. United States, 362 U.S. 145, 149 (1960).

Here, "any" modifies the singular noun "purpose." See § 78bb(f)(5)(B)(ii). The word "purpose," in turn, is either a "determined intention or aim" or "[t]he reason for which something is done or made, or for which it exists." Purpose, Oxford English Dictionary Online,

6

http://www.oed.com/view/Entry/154972?rskey=t6Cdij& result =1#eid (last visited Aug. 25, 2019).

Together, these dictionary definitions reveal that the phrase "covered class action" has a broad meaning that includes an action that (1) is not necessarily formally joined or consolidated with a specific case but (2) still proceeds with that case "as a single action" for whatever reason.[6]  See § 78bb(f)(5)(B)(ii); Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 220 (2008) ("Congress' use of 'any' to modify 'other law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind."); see also Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund, 138 S. Ct. 1061, 1071 (2018) (observing that the phrase "covered class action" has a "broad definition").

II

Focusing on the phrase "proceed as a single action for any purpose," my colleagues entertain accepting Plaintiffs' invitation to impose a simultaneity requirement so that the SLUSA-precluded actions must be pending at the same time as the class action.  The Majority appropriately notes that simultaneity is not an absolute requirement, Maj. Op. at 17, and, in fact, there are three reasons why such a requirement does not exist.

First, the word "single" does not inherently involve a timing component.  As an adjective, "single" means "[s]ole, unaccompanied, individual; separate" or "[i]ndividual, as

---

[6] I agree with the Majority's interpretation of the words "proceed" and "action."  Maj. Op. at 16-17.

7

contrasted with larger bodies or number of persons or things." Single, Oxford English Dictionary Online, http://www.oed.com/view/Entry/180129?rskey=IvoNvj&resu lt= 2&isAdvanced=false#eid (last visited Aug. 25, 2019). My colleagues similarly note that the adjective "single" means "consisting of one as opposed to or in contrast with many." Maj. Op. at 16. My colleagues also observe that, "[b]y qualifying 'single action' with the prepositional phrase 'for any purpose,' Congress clarified that the lawsuits need not proceed together" to constitute a single action. Maj. Op. at 17. This reading makes sense. Although my colleagues require the cases to be combined for joint management for SLUSA's preclusion provision to apply, they recognize that the cases need not always coincide for some time period. A plain-text reading shows that their recognition is warranted; the phrase "any purpose" is broad and not limited to simultaneous events. In context, it captures suits that "proceed as a single action" for functional reasons. In other words, lawsuits that functionally proceed as a single action may fall within SLUSA's preclusive scope and need not pend simultaneously.[7]

Second, principles of statutory interpretation do not command a simultaneity requirement. The Majority relies on

---

[7] Likewise, the word "proceed" in the preclusion provision does not have a timing component. The Majority states that "proceed" means "to carry on a legal action or process." Maj. Op. at 16. Even under the Majority's interpretation of the word "proceed," Plaintiffs' individual actions proceeded with the Vytorin Class Actions because the claims in both cases started together, as Plaintiffs pursued their claims as class members until they opted out.

8

the ejusdem generis canon[8] and concludes that, because the verbs "joined" and "consolidated" share almost identical meanings and involve contemporaneous lawsuits, so too must the phrase "proceed as a single action."[9] Maj. Op. at 18. Ejusdem generis is a "statutory canon" providing that "where

---

[8] Plaintiffs never invoked ejusdem generis before the District Court, and so the Majority assumes that Plaintiffs did not forfeit their ejusdem generis argument on appeal. See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 146-47 (3d Cir. 2017) (holding that the failure to timely assert an argument constitutes a forfeiture and that we "will not reach a forfeited issue in civil cases absent truly exceptional circumstances" (internal quotation marks omitted)).

[9] In addition, the grammatical structure of the "covered class action" clause does not lend itself easily to ejusdem generis. SLUSA's preclusion provision bars lawsuits that "are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B). The words "joined" and "consolidated" are similar because the linking verb "are" governs their meaning. By contrast, the phrase "otherwise proceed as a single action for any purpose" has its own independent verb, "proceed"; the verb "are" does not affect the phrase "otherwise proceed as a single action for any purpose." Congress could have drafted the final part as "otherwise proceeding as a single action for any purpose" to maintain the parallel structure but chose not to do so. Thus, ejusdem generis does not necessarily apply. See United States v. EME Homer City Generation, L.P., 727 F.3d 274, 293 (3d Cir. 2013) (observing, in the context of ejusdem generis, that "general phrases cannot be so narrowly construed that they become meaningless").

9

general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar to those objects enumerated by the preceding specific words." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114-15 (2001) (internal quotation marks and alteration omitted). Ejusdem generis "is not a rule of law but merely a useful tool of construction resorted to in ascertaining legislative intent." Waterfront Comm'n of N.Y. Harbor v. Elizabeth-Newark Shipping, Inc., 164 F.3d 177, 184 (3d Cir. 1998). Because the plain meaning of the words reflects Congress' intent, it is unnecessary to apply this canon. Id. (holding that ejusdem generis "should not be employed when the intention of the legislature is otherwise evident" (citation omitted)).

Moreover, even when applying ejusdem generis, we have noted that "Congress does not intend every seemingly open-ended phrase to be read narrowly." United States v. EME Homer City Generation, L.P., 727 F.3d 274, 292 (3d Cir. 2013). "From time to time, a broadly worded statutory term is intended to be just that—broad." Id. The words "otherwise" and "any" in this phrase fall squarely in that category. The phrase "proceed as a single action for any purpose" is broad and includes lawsuits that proceed as a single action for functional reasons, even if they are not pending at the same time. § 78bb(f)(5)(B)(ii). This reading accords with Congress' intent of maintaining a "broad interpretation of SLUSA," Rowinski, 398 F.3d at 299 (citing S. Rep. No. 105-182, at *8 (1998)), to inhibit circumvention of the PSLRA. Because SLUSA's language and its purpose confirm the preclusion provision's broad scope, the phrase "otherwise proceed"

10

should not be limited by its more specific predecessors "joined" and "consolidated."[10]

---

[10] The Majority refers to legislative inaction to show that Congress has "declined . . . to broadly preempt state-law securities claims," Maj. Op. at 20, but SLUSA's legislative history and the "atmosphere" in which it was enacted support a broad reading of its preclusive scope, see Lord Abbett, 553 F.3d at 254.

Congress passed SLUSA because plaintiffs were filing state-law causes of action to avoid the PSLRA's "more stringent requirements," H.R. Rep. No. 105-640, at *10 (1998), and hence interfered with the establishment of a uniform standard of liability for nationally traded securities, see S. Rep. No. 105-182, at *3. To further this uniformity goal, Congress intended that SLUSA be "interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition." Id. at *8. To this end, Congress, among other things, (1) provided a "definition of class action that [was] intended to prevent evasion of the [PSLRA] bill through the use of so-called 'mass action'" and (2) chose the word "covered class action" in SLUSA to reflect that it was aimed at activity that captured more than a Rule 23 "class action." Id. at *7.

In addition, even senators who disagreed with SLUSA recognized that its definition of "covered class action" was broad, see id. at *19-20, and that it was "broad enough to pick up individual investors against their will" because "[e]ven if the lawsuits are brought by separate lawyers, without coordination . . . they may qualify as a class action and thus be preempted." Id.; see also H.R. Rep. No. 105-640, at *45-46 ("[I]ndividuals who bring suits in state court in their own name may find, if others have brought similar suits, that their claims

11

The doctrine of absurdity also counsels against imposing a simultaneity requirement. It is a "basic tenet of statutory construction . . . that courts should interpret a law to avoid absurd or bizarre results." In re Kaiser Aluminum Corp., 456 F.3d 328, 338 (3d Cir. 2006); see also Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004). Grafting a simultaneity requirement onto SLUSA's "covered class action" provision would yield an absurd result because it "defies rationality." United States v. Fontaine, 697 F.3d 221, 228 (3d Cir. 2012). Under Plaintiffs' interpretation, an opt-out action filed thirty minutes after a class action settles would not be SLUSA-precluded, but the identical opt-out action filed thirty minutes before a class action settles would be SLUSA-precluded simply because such an opt-out action would be pending in a court contemporaneously with the class action.

---

are preempted . . . . For instance, if an investment adviser churns the accounts of or recommends unsuitable securities to clients in a single state and more than 50 of them seek to recover in the same court, each filing their own individual action, they may be forced to constitute a class action and have to pursue their claims—if possible—in federal court."). Thus, Congress did not require actual coordination among plaintiffs for individual actions to be "covered class actions." See id. While Congress envisioned that functional coordination is sufficient, actual coordination occurred here, as demonstrated by Plaintiffs' reliance on all of the pretrial activity in the Vytorin Class Actions. See infra Section III. The strategic decision to wait to file their individual lawsuits until after the Vytorin Class Actions settled, even though they opted out months earlier, was merely an attempt to avoid SLUSA's bar.

12

Third, the statute's "covered class action" definition includes a verb in the past tense, demonstrating that SLUSA does not demand simultaneity between the individual and class action. A "covered class action" includes "any group of lawsuits" that is (1) "filed in or pending in the same court" and (2) "otherwise proceed as a single action for any purpose." § 78bb(f)(5)(B)(ii). The first part of the definition is phrased disjunctively, and covers cases that were filed, or that are pending, at the time of the individual actions. A "filed" action can be active or closed, and so, when used alone, the word "filed" is not limited to only ongoing cases. That said, given the adjacent use of the word "pending" after the disjunctive "or" (as in "filed or pending"), the word "filed" in the statute refers to a closed case. Other interpretations could render the word "pending" surplusage.[11] Likewise, to impose a simultaneity requirement would read out the phrase "filed in," as such a view of "covered class actions" would include only "any group of lawsuits ~~filed in or~~ pending in the same court." § 78bb(f)(5)(B)(ii); see TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quotation marks omitted)). Thus, the use of the past-tense "filed," alongside "pending," shows that SLUSA can preclude an ongoing opt-out suit even though the "filed" class action settled. As a result, the settled Vytorin Class Actions were "filed" actions while Plaintiffs' suit against Merck and Schering were "pending."

---

[11] I acknowledge my colleagues' point that a transferred or removed action is not filed in, but could be pending in, a district court, Maj. Op. at 19, but this does not diminish the interpretation of "filed" versus "pending" offered herein.

13

See In re Lehman Bros. Sec. & ERISA Litig., 131 F. Supp. 3d 241, 267 (S.D.N.Y. 2015) (holding that settled class actions "count towards the 50-person SLUSA threshold").

For these reasons, SLUSA's text does not impose a simultaneity requirement that mandates the main class action and the individual action be simultaneously pending.

III

As discussed above, an action may be a "covered class action" if it "otherwise proceed[s] as a single action for any purpose." § 78bb(f)(5)(B)(ii)(II). One such purpose is case management. Thus, to determine whether a plaintiff's individual action forms part of a SLUSA "covered class action" for case management purposes, a court must engage in a fact-specific inquiry that examines both "the parties' conduct and the [district court's] handling" of the cases to determine whether the activity in a plaintiffs individual case and the class action were coordinated. Stichting Pensioenfonds ABP v. Merck & Co., Inc., Civ. No. 05-5060 (SRC), 2012 WL 3235783, at *15 (D.N.J. Aug. 1, 2012); see also Discovery Global Citizens Master Fund, Ltd. v. Valeant Pharm. Int'l, Inc., Civ. Nos. 17-7321, 16-7324, 16-7328, 16-7494, 16-7496, 16-7497, 2018 WL 406046, at *6 (D.N.J. Jan. 12, 2018) (holding "that the level of coordination in these related matters . . . triggers SLUSA preemption").

Such coordination may be revealed in the parties' procedural activities. The Honorable Stanley R. Chesler eloquently labeled such activities as "indicia of coordination." Stichting, 2012 WL 3235783, at *15. These indicia include whether:

14

- the civil cover sheet identifies the individual action as "related" to the main class action, Amorosa, 682 F. Supp. 2d at 375-76;

- the individual action's allegations are similar to those of the main class action, Kuwait Inv. Office v. Am. Int'l Grp., Inc., 128 F. Supp. 3d 792, 812 (S.D.N.Y. 2015); Stichting, 2012 WL 3235783, at *15; Amorosa, 682 F. Supp. 2d at 376;

- a case management order regulates both the individual action and the class action, Kuwait Inv. Office, 128 F. Supp. 3d at 812;

- the plaintiff in the individual action seeks to amend his complaint after motions to dismiss are filed or decided, see Amorosa, 682 F. Supp. 2d at 376;

- the plaintiff in the individual action seeks to stay the individual action after "resolution of the [main] class action," id. at 377;

- the plaintiff in the individual action enjoys the benefit of the main class action, such as coordinating discovery, Kuwait, 128 F. Supp. 3d at 812-13; and

- the plaintiff in the individual action has otherwise coordinated in "other litigation activity" with the plaintiffs in the main class action, such as by filing "consolidated and

15

interrelated briefing that frequently [draws] upon decisions and litigation events in the [c]lass [a]ction," Kuwait, 128 F. Supp. 3d at 812-13; In re Fannie Mae 2008 Sec. Litig., 891 F. Supp. 2d 458, 480 n.15 (S.D.N.Y. 2012).

The activity in the Vytorin Class Actions, along with Plaintiffs' actions, reveal many "indicia of coordination," Stichting, 2012 WL 3235783, at *15, and show that Plaintiffs' cases "proceed[ed]" with the Vytorin Class Actions "as a single action for any purpose," see § 78bb(f)(5)(B)(ii). Indeed, even under the Majority's test for SLUSA preclusion—that an individual action must "be at least partially coordinated" with the class action, though the individual action need not simultaneously pend with the class action, Maj. Op. at 17—Plaintiffs' lawsuits fit the bill:

- Plaintiffs' opt-out complaints were virtually identical to, and explicitly stated that they were "predicated upon," App. 97-98, the Vytorin Class Action complaints, compare App. 91-96, with Supp. App. 1-7;

- Plaintiffs' state-law fraud claims were "virtually identical" to their federal securities claims that were the subject of the Vytorin Class Actions, App. 1146;

- Plaintiffs certified that their complaints were the "subject" of the Vytorin Class Actions, see, e.g., App. 265, 644;

16

- Plaintiffs marked their civil cover sheet as "related" to the Vytorin Class Actions, see, e.g., App. 449;

- as class members, Plaintiffs benefitted from discovery and told the District Court and our Court that the discovery in their cases would largely rely on discovery already obtained in the Vytorin Class Actions, App. 966, 1043, Supp. App. 551 n.15, and any additional discovery would be "minimal" because their cases would mostly depend on class discovery, App. 985; see also App. 984 (stating that Plaintiffs' state-law fraud claims were "virtually" the same as the federal securities claims and "will require virtually identical discovery, as [their] federal claims"), App. 993[12]; and

- as class members, Plaintiffs benefited from various pretrial proceedings, including sealing,

---

[12] On remand following our ruling that Plaintiffs' federal securities claims were time-barred under California Public Employees' Retirement System v. ANZ Securities, Inc., 137 S. Ct. 2042 (2017), N. Sound Capital LLC v. Merck & Co. Inc., 702 F. App'x 75, 77-78 (3d Cir. 2017), Plaintiffs attempted to retreat from their earlier statements about the status of discovery. At oral argument on the motion to dismiss their state-law fraud claim, Plaintiffs asserted that the individual actions did not have "really anything else to do with the class action," and in response the District Court astutely observed that Plaintiffs "were going to use clearly the discovery," to which Plaintiffs said, "Maybe so." 1043a.

App. 892 (Dkt. Nos. 319-22); summary judgment, see App. 892 (Dkt. No. 316), 939 (Dkt. No. 252); in limine and Daubert motions, App. 893-95 (Dkt. Nos. 340-44, 349); submission of a final pre-trial order, see, e.g., App. 944 (Dkt. No. 298); designation of deposition excerpts and exhibits for trial, see, e.g., In re Merck & Co., Inc. Vytorin/ZETIA Sec. Litig., No. 2:08-cv-02177, Dkt. No. 326 at 38 (Apr. 18, 2013)[13]; disclosure of witness lists and lay opinions, id. at 10-23; submission of proposed voir dire, jury instructions, verdict sheets, id. at 51-52, and trial memoranda, App. 899-900 (Dkt. Nos. 375, 379), and obtained the benefit of various stipulations, including those concerning trial evidence, App. 893 (Dkt. No. 339).

By filing "nearly identical complaints" to those of the Vytorin Class Actions and enjoying the benefits of the class-action device to obtain discovery and the fruits of all of the pretrial activities before opting out, Plaintiffs "created the

---

[13] This pretrial order reflects the public version. The original proposed pretrial order was filed in February 2013 before Plaintiffs opted out. App. 944 (Dkt. No. 298).

foundation" for SLUSA's bar.[14]  In re Enron Corp. Sec., 535 F.3d 325, 333, 342 (5th Cir. 2008).  In short, Plaintiffs made "use of a procedural vehicle akin to a class action" by first being part of the Vytorin Class Actions and then opting out to pursue individual actions after receiving the benefit of the coordinated activities in the class action.  See LaSala, 519 F.3d at 128.  Thus, the District Court did not err by concluding that Plaintiffs' individual actions were part of a "covered class action," § 78bb(f)(5)(B), and hence precluded under SLUSA.

IV

For all of these reasons, I respectfully dissent.

---

[14] Because Plaintiffs never raised any constitutional issues with applying SLUSA before the District Court or on appeal, and I see none, I would decline to address these concerns.  See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. and Constr. Trades Council, 485 U.S. 568, 575 (1988) (observing that the constitutional avoidance canon "reflects the prudential concern that constitutional issues [need] not be needlessly confronted").