**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2861
_____

PERRIGO INSTITUTIONAL INVESTOR GROUP,
Individually and on behalf of All Others Similarly Situated;
SCULPTOR MASTER FUND LTD; SCULPTOR
ENHANCED MASTER FUND LTD

v.

JOSEPH C. PAPA; L PERRIGO COMPANY PLC; JUDY
BROWN; LAURIE BRLAS; GARY M. COHEN; MARC
COUCKE; JACQUALYN A. FOUSE; ELLEN R.
HOFFING; MICHAEL R. JANDERNOA; GERALD K.
KUNKLE, JR.; HERMAN MORRIS, JR.; DONAL
O'CONNOR;

Sculptor Enhanced Master Fund Ltd and Sculptor Master
Fund Ltd,
                        Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:16-cv-02805)
District Judge: Honorable Renée M. Bumb
_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 8, 2025

Before: KRAUSE, MATEY, and PHIPPS, *Circuit Judges*

(Filed: August 12, 2025)

Luke J. O'Brien
Mariellen Dugan
Calcagni & Kanefsky LLP
1085 Raymond Boulevard
One Newark Center, 18th Floor
Newark, NJ 07102

Jesse Bernstein
Jonathan E. Pickhardt
Owen F. Roberts
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue, 9th Floor
New York, NY 10016

   *Counsel for Appellants*

Samuel Groner
Jason S. Kanterman
Fried Frank Harris Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004

James E. Anklam
Katherine L. St. Romain

Fried Frank Harris Shriver & Jacobson LLP
801 17th Street NW, Suite 600
Washington, DC 20006

 *Counsel for Appellee Perrigo Company plc*

Reed Brodsky
David F. Crowley-Buck
Gibson Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166

 *Counsel for Appellee Joseph C. Papa*

_____

## OPINION OF THE COURT

_____

KRAUSE, *Circuit Judge.*

Like much of the law, the Federal Rules of Civil Procedure are the product of compromise, seeking to balance several laudatory—and sometimes conflicting—interests, including protection of parties' rights and the efficient administration of justice. In striking this balance, the Rules fault litigants who fail to follow their directives. So when parties deviate from them, even by mistake, they usually have to live with the consequences.

Appellants Sculptor Master Fund, Ltd. and Sculptor Enhanced Master Fund, Ltd. (together, Sculptor) seek to avoid those consequences, but they cannot. This case is born of mistakes. After shareholders sued Appellee Perrigo Company

plc for alleged securities laws violations, the District Court certified a class that included Sculptor and specified how class members could request exclusion. Despite its intention to do so, counsel for Sculptor never opted out. But no one spotted that failure at the time, and the parties litigated Sculptor's separate individual action for years until Perrigo realized Sculptor never complied with the District Court's instructions for requesting exclusion. Realizing its error, Sculptor now belatedly seeks to be excluded from the class, but we agree with the District Court that, in light of its mistakes, Sculptor's arguments for exclusion fail. We therefore will affirm.

## I.      **Background**

Perrigo is the world's largest manufacturer of over-the-counter healthcare products. In April 2015, Mylan N.V.—a then-competing drug manufacturer—announced an unsolicited tender offer to purchase Perrigo for $205 per share—approximately a 25% premium over the price at which Perrigo's shares traded at that time. In response, Perrigo's board demurred and encouraged shareholders to reject the offer. Thereafter, Mylan twice increased its offer to approximately $227 per share and $246 per share. Each time, Perrigo's board rejected the offer and advised shareholders to do the same. Mylan initiated its formal tender offer in September 2015, which Perrigo again urged investors to reject.

Perrigo successfully defeated Mylan's tender offer,[1] but at a cost. During the course of fending off the offer, Perrigo

---

[1] Perrigo shareholders tendered less than 50% of outstanding shares by the time the offer closed, falling short of the required threshold and defeating Mylan's offer.

and its officers made allegedly material misrepresentations and omissions about Perrigo's business performance. After the close of the tender offer, Perrigo announced worse-than-expected earnings, previously undisclosed asset impairment charges, and the need to restate every financial statement it issued between April 2015 and May 2017 due to GAAP errors amounting to over $1 billion in misstatements. As a result, Perrigo's share value declined precipitously, dropping more than 62%.

Unsurprisingly, investors sued. In May 2016, a group of institutional investors filed this class action against Perrigo and several of its officers alleging, among other things, violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.[2] In November 2018, the lead class plaintiff moved to certify the class under Federal Rule of Civil Procedure 23(b)(3). Sculptor, as one of the largest holders of Perrigo stock during the class period (holding about 2.6 million, or 5%, of outstanding Perrigo shares), was a putative class member, but, like a number of other investors, decided to pursue a separate action rather than remain in the class. So in February 2019—while class certification remained pending—Sculptor initiated its own lawsuit against Perrigo, alleging substantially the same federal securities laws violations as the class.

The District Court certified the class in November 2019. Later, in July 2020, the Court approved a class action notice pursuant to Rule 23(c)(2)(B) to be sent to class members informing them about the pendency of the *Roofer's* class action

---

[2] This action became known as the "*Roofer's*" class action, so called due to the named class plaintiff, Roofer's Pension Fund.

and their right to opt out of the class. In particular, the notice included the following instructions for requesting exclusion:

> **HOW TO BE EXCLUDED FROM THE CLASSES**: If you fall within one or more of the Class definitions and are not otherwise excluded, you will automatically be considered a member of such Class unless you request exclusion. Any member of a Class may request not to be bound by these proceedings. To exclude yourself from the Class(es), you must send a signed letter by mail stating that you "request exclusion" from the Class(es) in "*Roofer's Pension Fund v. Papa, et al.*, No. 16-CV-2805-MCA-LDW." Be sure to include: (i) your name, address, and telephone number, (ii) the transactional details of the Perrigo common stock you purchased, acquired, sold and/or held during the Class Period, including purchase/sale dates, amount of shares purchased or sold, the price of such purchases or sales, and the number of shares held as of market close on November 12, 2015 at least through 8:00 a.m. eastern time on November 13, 2015; and (iii) the signature of the person or entity requesting exclusion or an authorized representative. Your request for exclusion will not be effective unless it contains all of this information. You must then mail your exclusion request, ***postmarked no later than [90 days after the Postcard is mailed], 2020***, to:

> Perrigo Securities Litigation
> [Notice admin]

6

App. 681–82 (emphasis in original). Class members had until December 3, 2020 to opt out. Sculptor admits it knew about the notice and instructions for requesting exclusion.

The opt-out deadline came and went, and Sculptor never submitted an exclusion request.[3] But neither Sculptor nor Perrigo realized this mistake at the time. Instead, the missteps picked up pace as both parties carried on litigating Sculptor's individual action. Even when the list of opt-outs was published in early 2021 without Sculptor's name on it, neither Sculptor nor Perrigo took note. Nor did they notice Sculptor's oversight throughout 2021 when other investors who did notice their names missing requested and were granted exclusion by the District Court after the opt-out deadline.

Over the next three-and-a-half years, Sculptor proceeded as if it had opted out of the *Roofer's* class action, and Perrigo, assuming that was the case, undertook the following actions:

- Moving to dismiss Sculptor's individual action as untimely after the conclusion of the opt-out period;

_____

[3] Sculptor's former counsel later represented to the District Court that she was "unable to definitely determine whether the [exclusion] letter was never mailed . . . or whether it was mailed and either lost en route to the Claims Administrator or received by the Claims Administrator but not recorded in the records of the parties that had formally opted out of the Class Action." App. 1145–46. The District Court found that the record "suggests Sculptor's former counsel did not prepare the opt-out request." *Roofer's Pension Fund v. Papa*, No. 16-2805, 2024 WL 4205638, at *15 (D.N.J. Sep. 12, 2024).

7

- Providing the District Court with a status update of opt-out actions, one of which was Sculptor's;

- Sending the District Court a joint letter with opt-out plaintiffs (including Sculptor) regarding a discovery schedule for opt-out actions;

- Deposing Sculptor's Rule 30(b)(6) designee;

- Serving Sculptor with expert reports; and

- Identifying Sculptor as one of the opt-out actions from the *Roofer's* class action in its annual 10-K reports filed with the SEC from 2020 to 2024.

At no point in this folly did Sculptor or Perrigo ever confirm whether Sculptor had in fact opted out of the class.

In April 2024, class counsel and Perrigo sought approval of a proposed settlement of the class action. The District Court preliminarily approved the settlement, which included a provision requiring all class members pursuing individual actions to dismiss those actions within thirty days of the preliminary approval or risk forfeiting participation in the settlement. At that point, Sculptor's failure to opt out came to light. Per Sculptor, "during a phone call, Perrigo's counsel contended for the first time that Sculptor was precluded from pursuing its individual litigation because it had not opted out of the Class Action years earlier." Opening Br. 17. With this revelation, Sculptor's former counsel investigated and confirmed that Sculptor never requested exclusion from the class. According to counsel, the failure was inadvertent because "she instructed an associate at her firm to submit an opt-out request to the Court-approved Claims Administrator."

*Roofer's Pension Fund v. Papa*, No. 16-2805, 2024 WL
4205638, at *5 (D.N.J. Sep. 12, 2024).

So it came to pass, nearly three-and-a-half years after
the deadline, that Sculptor moved belatedly to opt out of the
class. It first argued that its maintenance of an individual
action against Perrigo throughout the pendency of the class
action, along with other related conduct, provided a
"reasonable indication" of its intent to opt out and, thus, it
should be deemed to have timely requested exclusion.
Alternatively, Sculptor contended, it should have been
permitted to opt out after the deadline because it had
demonstrated "excusable neglect." Sculptor also challenged
the adequacy of the class action notice.

In a commendably thorough opinion, the District Court
considered Sculptor's arguments before rejecting each one. It
reasoned that (1) a class member's "reasonable indication" of
an intent to opt out cannot satisfy its obligation to follow the
measures established by a district court to request exclusion;
(2) Sculptor had not demonstrated that its neglect should be
excused; and (3) the class notice satisfied due process. This
timely appeal followed.

## II.    **Jurisdiction and Standard of Review**

The District Court had jurisdiction under 15 U.S.C.
§ 78aa(a) and 28 U.S.C. § 1331 and § 1367(a). We have
jurisdiction under 28 U.S.C. § 1291. We review questions of
law—such as whether the District Court applied the proper
legal standard—*de novo*. *Huber v. Simon's Agency, Inc.*, 84
F.4th 132, 144 (3d Cir. 2023). On the other hand, we review a
District Court's "excusable neglect" determination for abuse of

9

discretion. *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001).

While we have not previously decided which standard of review to employ when reviewing whether a class action notice comports with due process, whether a notice satisfies the minimum requirements of the Due Process Clause of the Fifth Amendment is a pure question of law. *Cf. In re Phila. Newspapers, LLC*, 690 F.3d 161, 171 (3d Cir. 2012) ("We review due process claims *de novo*."). Thus, we exercise plenary review of that determination. *See Low v. Trump Univ., LLC*, 881 F.3d 1111, 1116 (9th Cir. 2018); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 942 (10th Cir. 2005).

## III.  **<u>Discussion</u>**

Sculptor advances three arguments on appeal: (1) that a class member may opt out of a class action by providing a "reasonable indication" of its intent to opt out, and that Sculptor did so here; (2) that, if the "reasonable indication" standard does not apply, Sculptor has demonstrated "excusable neglect" to permit its untimely request for exclusion; and (3) that the class action notice does not satisfy due process. We disagree on all fronts.

### A.  <u>The "Reasonable Indication" Standard Finds No Support in Rule 23</u>

Federal Rule of Civil Procedure 23 governs the administration of class actions in federal courts. While class actions come in various forms, *see* Fed. R. Civ. P. 23(b), this one, like most, involves a class seeking damages under Rule

10

23(b)(3).  In such cases, Rule 23 imposes certain requirements on the district court and class plaintiffs in order to certify and settle a class action.  Among other things, the district court "must direct to class members the best notice that is practicable under the circumstances" for any class certified under Rule 23(b)(3).  *Id.* (c)(2)(B).  This notice "must clearly and concisely state in plain, easily understood language," *id.*, various characteristics of the class action, including, crucially, "that the court will exclude from the class any member who requests exclusion" and "the time and manner for requesting exclusion."  *Id.* (c)(2)(B)(v)–(vi).

A Rule 23(b)(3) class member's right to request exclusion—commonly known as "opting out"—reflects "our deep-rooted historic tradition that everyone should have his own day in court."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (quoting *Martin v. Wilks*, 490 U.S. 755, 762 (1989)).  Indeed, the Constitution demands that "every absent class member must 'be provided with an opportunity to remove himself from' a class action seeking predominantly damages." *N. Sound Cap. LLC v. Merck & Co.*, 938 F.3d 482, 492 (3d Cir. 2019) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

Despite Rule 23's careful protections for a class member's right to opt out, however, it "does not specify any particular means by which the absentee is to request exclusion."  7AA Wright & Miller's Federal Practice & Procedure § 1787 (3d ed. May 2025 update).  Instead, district courts enjoy "broad authority to exercise control over a class action," *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)), and "have discretion in selecting a method" for class

11

members to opt out, 3 Herbert B. Newberg & William B. Rubenstein, Newberg and Rubenstein on Class Actions § 9:46 (6th ed. June 2025 update).

Sculptor does not dispute that district courts have substantial discretion to manage class actions and establish the procedures for absent class members to request exclusion. Instead, it contends that, irrespective of which measures a district court directs class members to use, a class member must be excluded from the class whenever it has "provided a 'reasonable indication' of its intention to opt out of a class action." Opening Br. 24. In support of this position, Sculptor urges us to follow the Second and Tenth Circuits which have suggested that "[a] reasonable indication of a desire to opt out" is sufficient for an absent class member to exclude themselves from the class. *In re Four Seasons Sec. L. Litig.*, 493 F.2d 1288, 1291 (10th Cir. 1974); *accord Plummer v. Chem. Bank*, 668 F.2d 654, 657 n.2 (2d Cir. 1982) ("Any reasonable indication of a desire to opt out should suffice."). We disagree and decline to adopt this "reasonable indication" standard.

Our inquiry begins with Rule 23's plain text.[4] *See Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 225 (3d Cir. 2012). As noted above, it provides only that a district court shall direct that notice be sent to class members informing them "that the court will exclude from the class any member

---

[4] To the extent Sculptor argues that the Constitution compels adoption of the "reasonable indication" standard, we disagree, since due process requires only that absent class plaintiffs be "provided with a request for exclusion that can be returned within a reasonable time to the court." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 814 (1985).

who requests exclusion" and "the time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v)–(vi). Rule 23's opt-out feature, then, turns on a class member's "affirmative[] request to be excluded," *In re Citizens Bank, N.A.*, 15 F.4th 607, 612 (3d Cir. 2021), in other words, whether a class member has in fact requested exclusion. But Rule 23 does not fix *how* a class member must request exclusion—that decision is left to the district court to fill in, as it may set "the time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(vi). So Rule 23 authorizes district courts to decide when and how class members may opt out, and nothing in it requires district courts to accept any particular form of a request for exclusion, whether through a "reasonable indication of a desire to opt out" or otherwise.[5] *In re Four Seasons*, 493 F.2d at 1291.

A look at Rule 23 as a whole confirms this interpretation. Rule 23(e)(4), which applies to class settlements, provides that a district court "may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Sculptor's argument, however, renders this provision largely superfluous because if, as the "reasonable indication" standard demands, opting out is always on offer, a settlement would never need to "afford[] a new opportunity to request

---

[5] To be sure, while district courts enjoy broad discretion to manage class actions and establish the means for absent class members to request exclusion, "[t]he opt-out procedure should be simple and should afford class members a reasonable time in which to exercise their option." Manual for Complex Litigation (Fourth) § 21.321 (2004).

exclusion"—class members could always indicate their intent to opt out at any point. Fed. R. Civ. P. 23(e)(4). But just as with statutes, we must "give effect, if possible, to every clause and word" of a Federal Rule. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)). The "reasonable indication" standard would make Rule 23(e)(4) "insignificant, if not wholly superfluous," *id.*, buttressing our conclusion that nothing in Rule 23 requires its adoption.

We could end our analysis there, having determined Rule 23's text does not embrace the "reasonable indication" standard. But we cannot ignore the practical consequences the District Court recognized that also militate against adopting the "reasonable indication" standard.

For starters, permitting parties to opt out through mere "indication" rather than following the directed means of requesting exclusion promises to make administering class actions even more difficult. Today's class actions are already immensely complicated and "may have thousands, even millions, of members." *In re Navistar MaxxForce Engines Mktg., Sales Pracs., & Prods. Liab. Litig.*, 990 F.3d 1048, 1053 (7th Cir. 2021). Endorsing the "reasonable indication" standard thrusts on district courts the task of resolving "dozens or hundreds of difficult questions"—each necessitating its own factfinding—to determine whether class members are in or out of the class at any point during the pendency of the action. *Id.*

Contrast this approach with the (straightforward) alternative—class members must follow the procedures prescribed by a district court under Rule 23(c)(2)(B) during the specified time period to exercise their right to exclude

14

themselves from the class.  Following this course has the virtue of both being easily administrable and making opt-outs readily determinable.  As for administrability, requiring class members to avail themselves of the procedures set out in a class notice avoids subjecting district courts to a flurry of motions, each claiming that certain actions constitute a "reasonable indication" of a class member's intent to opt-out, thereby lessening the heavy burden that district courts already bear by presiding over class actions.  Relatedly, insisting that class members "follow the instructions they have been given and opt out (or not) in the formal way the district judge told them to use" does much to avoid disputes about whether a class member has in fact opted out.  *Id.*  Instead of resolving scores of motions and deciphering cryptic "indications" of an intent to opt out, district courts need only consider whether individuals have followed the measures established to request exclusion, which lends itself to ready determination.[6]

This leads us to our second observation.  Embracing the "reasonable indication" standard complicates the analysis a district court must undertake when considering whether to approve a class action settlement.  In order to accurately appraise whether a proposed settlement is "fair, reasonable, and adequate as required by Rule 23(e)," *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995), the district court has to know who is

---

[6] Of course, parties may on occasion dispute whether a class member has sufficiently complied with a district court's instructions for requesting exclusion.  Resolution of such disputes lies within the sound discretion of the presiding district judge.  *See In re Deepwater Horizon*, 819 F.3d 190, 195 (5th Cir. 2016).

in the class and, therefore, whose claims will be settled. But the "reasonable indication" standard makes class membership an endlessly moving target given the breadth of potential actions that might satisfy it. As the Seventh Circuit put it, "[w]ithout knowing who remains in, the judge could not decide whether [the settlement] is appropriate or perhaps should be reduced by opt-outs' claims, or treated as inadequate because class members had voted with their feet to disapprove the resolution." *In re Navistar MaxxForce*, 990 F.3d at 1053. Such indeterminacy risks "mak[ing] class actions difficult if not impossible to administer," *id.*, and we will not subject district courts to that added burden.

Finally, enforcing compliance with a district court's chosen opt-out mechanism guards against "the option of one-way intervention." *Id.* at 1052. Under the "reasonable indication" regime, a savvy class member might recognize that it can minimize its downside by litigating an individual action while simultaneously not opting out of the class. If the class member's individual action proves successful, it enjoys the recovery that comes with it. If not, it can argue that the lack of a formal opt-out notice means that it is entitled to take part in the class settlement. But this advantageous strategy falls away "when courts stick to the rules they have established."[7] *Id.* at 1053. By requiring a request for exclusion by a specified

---

[7] It would be odd to interpret Rule 23 to provide for this possibility given that "[t]he 1966 amendments [to Rule 23] were designed, in part, specifically to mend" the problem of one-way intervention "and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974).

16

deadline, class members are faced with a choice—strike out on their own in an individual action or remain a member of the class. Either way, class members cannot unfairly "hedg[e] their bets" to the detriment of the court and the class. *In re Processed Egg Prods. Antitrust Litig.*, 130 F. Supp. 3d 945, 952 (E.D. Pa. 2015) (Pratter, J.).

\* \* \*

We expect class members to comply with court orders to pursue and vindicate their rights. The right to opt out is no different. Accordingly, we join the Seventh Circuit in holding what intuition posits. Because Rule 23 requires a district court to prescribe the way for class members to request exclusion, they have to follow those instructions in order to opt out—a mere "reasonable indication" of an intent to opt out will not do. So Sculptor cannot now recast its conduct as an indication of its decision to opt out in order to cure its noncompliance with the District Court's clear instruction.

B.    The District Court Did Not Abuse Its Discretion by Declining to Permit Sculptor's Late Opt-Out

Alternatively, Sculptor argues the District Court abused its discretion by declining to excuse Sculptor's late opt-out notice. Federal Rule of Civil Procedure 6(b)(1)(B) permits a district court to excuse an untimely filing when "the party failed to act because of excusable neglect." Courts weigh the four factors articulated by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), to determine whether to permit a tardy filing. *Orthopedic Bone Screw*, 246 F.3d at 322–23. District courts must consider and balance all factors, and

17

"no one factor trumps the others." *In re Am. Classic Voyages Co.*, 405 F.3d 127, 133 (3d Cir. 2005).

Here, the District Court concluded that those factors—the danger of prejudice; length of delay; reason for delay; and whether the movant acted in good faith—weigh against Sculptor and rejected its attempt to excuse its late opt-out. We agree and consider each factor in turn.

### 1. *Prejudice*

We begin with the prejudice factor. Under *Pioneer*, "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999). On the record before it, the District Court reasoned that this factor "slightly weighs against Sculptor" because, while "Perrigo would suffer minimal prejudice from having to continue to defend" Sculptor's individual action, Perrigo maintained "an interest in achieving finality by resolving as many claims against it as possible." *Roofer's Pension Fund*, 2024 WL 4205638, at *14. We agree that this factor tilts against Sculptor, but primarily for a different reason than the District Court.

We have previously recognized that class action defendants have an interest in resolving as many claims as possible and that "achieving global peace is a valid, and valuable, incentive to class action settlements." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (en banc). But the class action device does not pursue finality and a global resolution of claims at all costs. Rather, "courts and Congress have constructed a careful balance designed to protect both the

18

absent class members . . . and defendants." *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 373 (3d Cir. 2022) (Scirica, J.). So upsetting a defendant's interest in resolving all claims against it does not suffice to establish prejudice—if it did, the prejudice factor would always weigh against excusing an untimely filing.[8]

Nonetheless, the record supports the District Court's determination that the prejudice factor weighs against Sculptor because its long-overdue opt-out notice threatened to derail Perrigo's settlement with the class. By the time that Sculptor moved for exclusion, the District Court had already provisionally approved the proposed settlement which included, and whose figures were based on, Sculptor's claims. Permitting Sculptor to opt out at that late stage had the prospect of sending the parties back to the drawing board to negotiate a new settlement in light of the diminished class. So while Sculptor's opt out would not have itself blown up the settlement,[9] the risk of undermining a provisionally approved

---

[8] For this same reason, we agree with the District Court that "merely having to continue to defend an ongoing lawsuit is not—without more—prejudicial enough to bar a party from opting out of a class action." *Roofer's Pension Fund*, 2024 WL 4205638, at \*14 (citing *In re Processed Egg Prods. Antitrust Litig.*, 130 F. Supp. 3d 945, 954 (E.D. Pa. 2015) (Pratter, J.) (concluding the same)).

[9] The proposed settlement did not include a "blow up provision" that would have permitted Perrigo "to withdraw from—or 'blow up'—[the] settlement if a certain number of class members opt out of the settlement." 4 Herbert B. Newberg & William B. Rubenstein, Newberg and Rubenstein on Class Actions § 13:6 (6th ed. June 2025 update).

19

settlement is exactly the type of "danger of prejudice to the nonmovant" that supports the District Court's determination that the prejudice factor slightly disfavors Sculptor. *Orthopedic Bone Screw*, 246 F.3d at 322–23.

2.    *Length of Delay*

Next, we consider "the length of the delay and its potential impact on judicial proceedings." *Pioneer*, 507 U.S. at 395. We measure delay "in absolute terms and not by reference to the import of intervening circumstances," meaning the operative period is the time between when the opt-out notice should have been filed versus the date leave was sought to file it late. *Orthopedic Bone Screw*, 246 F.3d at 325. Here, the District Court determined that Sculptor's delay was "substantial" and therefore the length-of-delay factor "strongly disfavor[ed] Sculptor." *Roofer's Pension Fund*, 2024 WL 4205638, at *12, *14.

By any measure, the length-of-delay factor strongly disfavors Sculptor. The opt-out deadline in the *Roofer's* class action was December 3, 2020. Sculptor did not move for leave to opt out until July 1, 2024. That three-and-a-half-year delay is substantial and cuts against characterizing Sculptor's neglect as "excusable."

Sculptor suggests that the District Court erred by weighing this factor against it despite its delay allegedly not affecting the progression of the class action. But as we explained in *In re Orthopedic Bone Screw Products Liability Litigation*, "consideration of the current effect of the delay on the proceedings" is inconsistent with our precedent that dictates "the length of the delay should be considered in

20

absolute terms." 246 F.3d at 325. In other words, this factor does not contain its own "prejudice" component duplicative of the first *Pioneer* factor. If it did, the length-of-delay factor would be entirely beholden to "the urgency created by the [defendant]'s time line," thereby rendering some delays "significant, whereas a similar delay, or even a much longer delay . . . would be insignificant" in other cases. *In re O'Brien Env't Energy*, 188 F.3d at 130. *Pioneer* does not demand that result, and neither will we.

### 3.   *Reason for Delay*

The third *Pioneer* factor—the reason for the movant's delay—also tilts against Sculptor for similar reasons. As all agree, Sculptor's mistake was due to its "former counsel's failure to file the opt-out request." *Roofer's Pension Fund*, 2024 WL 4205638, at *13. In isolation, this failure might be excusable. But what followed is not. After the expiration of the opt-out period, counsel for the class, at the direction of the District Court, filed a list of parties who had opted out to pursue individual actions against Perrigo. Several class members who intended to opt out noticed that their actions did not appear among those listed and, upon this realization, "expeditiously moved to be excluded after the opt-out deadline." *Id.* at *14. The District Court granted these motions.

This flurry of activity immediately after the opt-out deadline "should have alerted Sculptor's former counsel to at least check the Opt-out list." *Id.* But counsel did not verify Sculptor's opt-out status and instead merely continued course in the separate action against Perrigo. The only excuse offered for this failure was that counsel "did not review this list at the time and continued to believe thereafter that [counsel] had

21

submitted the opt-out letter to the Claims Administrator and that Sculptor had formally opted out of the Class Action." App. 1144 (declaration of Sculptor's former counsel). This omission on top of counsel's initial failure to submit an opt-out form only highlights a general "lack of diligence." *Roofer's Pension Fund*, 2024 WL 4205638, at \*14. And because "clients must be held accountable for the acts and omissions of their attorneys," *Pioneer*, 507 U.S. at 396, Sculptor bears the burden of its former counsel's mistakes.

Sculptor counters that its "inadvertent failure to ensure that a filing was completed should not have weighed against" it because, after all, "the concept of excusable neglect clearly anticipates . . . neglect on the part of the one seeking to be excused." Opening Br. 41 (quoting *In re O'Brien Env't Energy*, 188 F.3d at 128). True enough, but that does not get Sculptor very far. Under *Pioneer*, "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule" where "the rule is entirely clear." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (cleaned up). So the fact that Sculptor's mistake "was entirely avoidable and within [its] control," coupled with its demonstrated lack of diligence, supports the District Court's determination that this factor, too, weighs against it. *In re Am. Classic Voyages*, 405 F.3d at 134.

4.  *Good Faith*

Finally, the District Court concluded that the good-faith factor "weighs in Sculptor's favor." *Roofer's Pension Fund*, 2024 WL 4205638, at \*15. We agree. As the District Court found, "[n]othing in the record suggests Sculptor failed to timely opt out to gain a tactical advantage" or that its "failure

22

was intentional." *Id.* Perrigo does not argue to the contrary, and the record does not indicate the District Court's factual finding was clearly erroneous. Despite this favorable finding, Sculptor contends that the District Court "minimized the importance of Sculptor's good faith." Opening Br. 42. But our review of the District Court's well-reasoned opinion reveals no such minimization, so we reject this argument as well.

\* \* \*

In light of the record and the District Court's thoroughly reasoned opinion weighing the *Pioneer* factors, the District Court did not err—much less abuse its discretion—by concluding the balance of factors disfavors Sculptor. Thus, Sculptor has not demonstrated that its neglect was excusable, and it may not opt out of the class at this late stage.

## C. The Class Notice Satisfies Due Process

Sculptor's last argument challenges the adequacy of the class notice on due process grounds. In particular, Sculptor contends that the notice "fail[ed] to describe the consequences that would stem from a settlement with sufficient clarity" and "misstated the consequences that would follow from a proposed settlement." Opening Br. 47. For these reasons, according to Sculptor, the notice does not adequately apprise class members of the consequences of remaining in the class, thereby violating due process. We disagree.

Our cases have recognized the importance of accurate and clear class action notices as a function of due process. In addition to Rule 23(c)(2)(B)'s command that notices "clearly and concisely state in plain, easily understood language" the

23

seven enumerated categories of information concerning the class action, we have explained that, to comport with due process, "the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013). Thus, a notice must supply class members with enough information to make an informed decision about their rights and how best to protect them.

Here, the class notice satisfies this standard. Start with the warnings it provided. No fewer than three times, the notice cautioned class members about the consequences of class certification:

- "You will automatically be included in the Class(es) unless you request exclusion in accordance with the procedure set forth [in the notice]";

- "If you fall within one or more of the Class definitions and are not otherwise excluded, you will automatically be considered a member of such Class unless you request exclusion";

- "If you choose to remain in the Class(es), you will be bound by all orders and judgments in this Action, whether favorable or unfavorable."

App. 680–81 (emphasis removed). Read in tandem, these provisions plainly state that, unless they request exclusion, anyone falling within the class definition will be deemed a class member and bound by all orders and judgments in the *Roofer's* class action.

24

Sculptor accepts that these provisions satisfy due process as far as they go. It instead argues that the notice violates due process because it fails to adequately explain the consequences of one particular configuration of events. In Sculptor's view, the notice lacked any "warning that a settlement could eliminate their rights to pursue individual litigation" and "instead warned only that a loss of individual claims might occur '[i]f Defendants prevail,' and then only 'with regard to any of the issues decided in this Action.'" Opening Br. 48 (alteration in original) (quoting App. 681). On Sculptor's reading, the upshot is that "[n]owhere does the Notice warn that a settlement will eliminate individual litigation rights." *Id.*

But Sculptor's argument necessitates a hyper-technical reading of the notice that strains to create ambiguity where none exists. As is by now pellucid, due process demands only "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). With reasonableness as our guide, due process requires only that a notice "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). That a notice "could have more clearly described" the effects of a settlement "is not enough to demonstrate a due process violation." *In re Processed Egg*, 130 F. Supp. 3d at 951.

Against this benchmark, the notice ably comports with due process. The District Court persuasively explained that

"[r]ead together, the Notice's statements are clear" such that a reasonable person would understand that continued membership in the class would result in being bound by all orders and judgments, including settlement. *Roofer's Pension Fund*, 2024 WL 4205638, at \*11. And if a class member wished to continue its pursuit of an individual action against Perrigo, it had to request exclusion. That description of the consequences afforded class members the opportunity to evaluate their options and make an informed decision about their rights. Due process requires nothing more.

## IV.  Conclusion

We end as we began—this case is born of mistakes. To be sure, both sides made some. But on this occasion, the Civil Rules prioritize Perrigo's and the class's interests in efficiency and finality over Sculptor's interest in belatedly pursuing an individual action. Sculptor had the opportunity to opt out early in this litigation, but it failed to do so. Having made that mistake, it has to live with the consequences. Nothing in the Federal Rules of Civil Procedure requires it to be given a second chance years later.

For the foregoing reasons, we will affirm the District Court's judgment.